UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES,

Petitioner,

v.

MARTIN WILSON,

Respondent.

CIVIL NO. 00-1928 (DSD/JMM)

REPORT AND RECOMMENDATION

On August 14, 2000, the United States filed a Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1]. On September 18, 2000, a hearing was held at FMC-Rochester to determine whether Respondent is suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable psychiatric facility. Assistant United States Attorney Jerry Wilhelm, Esq. appeared on behalf of Petitioner; Katherine Menendez, Esq. appeared on behalf of Respondent who was personally present. The Court heard testimony from the Respondent and psychiatrist Dr. Andrew Olnes, M.D..

This matter is before the undersigned Magistrate Judge for a Report and Recommendation to District Judge David S. Doty pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B). Upon the following Findings of Fact/Report, it is recommended that the Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1] be granted; that Respondent is found to be suffering from a mental disease or defect for the treatment of which he is in need of hospitalization in a suitable psychiatric facility; and that Respondent be committed to the custody of the United States

FILED SEP 26 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Attorney General until no longer in need of such custody for care and treatment, or until the sentence expires, whichever occurs earlier.

## FINDINGS OF FACT/REPORT

### I. APPLICABLE LAW

Under 18 U.S.C. §4245, a prisoner who is serving time in a federal prison may not be transferred to a mental hospital without the prisoner's consent or a court order. United States v. Watson, 893 F.2d 970, 975 (8th Cir.), vacated in part on reh'g on other grounds by United States v. Holmes, 900 F.2d 1322 (8th Cir.), cert. denied, Watson v. United States, 497 U.S. 1006 (1990). If the prisoner objects to being transferred, the court must order a hearing to determine if there is "reasonable cause to believe that the person may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. §4245(a); United States v. Jones, 811 F.2d 444, 447 (8th Cir. 1987). "If, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General." 18 U.S.C. §4245(d). The Attorney General must then hospitalize the prisoner "for treatment in a suitable facility until he is no longer in need of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier." Id.

## II. APPLICATION TO RESPONDENT

The Petition alleges that Respondent Martin Wilson is presently suffering from a mental disease or defect for the treatment of which he is in need of custody and care in a suitable psychiatric facility. Respondent is a federal prisoner serving a 24 month sentence for violation of the terms of his supervised release. His supervised release followed a conviction and sentence for bank robbery in violation of 18 U.S.C. § 2113(a) imposed by the United States District Court, Northern District of Texas. He is currently housed in the Mental Health Unit of the Federal Medical Center at Rochester, Minnesota (FMC-Rochester). He is scheduled for release on September 21, 2001. Respondent was transferred to FMC-Rochester from FMC-Fort Worth, Texas for further evaluation and treatment of his mental condition on April 18, 2000. The Petition alleges that Respondent has refused care and treatment at FMC-Rochester.

### A. Respondent is Suffering from a Mental Disease or Defect.

At the September 18, 2000 hearing, FMC-Rochester staff psychiatrist, Dr. Andrew Lane Olnes testified that since April, when Respondent arrived at the facility, he has evaluated Respondent and diagnoses him with undifferentiated schizophrenia. To make this diagnosis, Dr. Olnes studied Respondent's medical file and past history, reviewed nurse's observations, completed four one-on-one visits with Respondent and made his own observations of Respondent who he sees approximately daily. The Court found Dr. Olnes to be a credible witness. He received his M.D. from Uniformed Services University of the Health Sciences in 1985; performed his residency at William S. Hall Psychiatric Institute, Columbia, SC; is certified by the American Board of Psychiatry and

Neurology; and is licensed in Minnesota. Dr. Olnes has worked as staff psychiatrist at FMC-Rochester for two years.

Respondent was sentenced to serve 87 months in prison with three years of supervised release on May 6, 1993. No mental health problems were documented during the early part of his imprisonment. Respondent's medical file revealed that in August, 1997 he began having a delusional belief that he was an FBI agent and was unjustly incarcerated while serving his sentence at FCI-Three Rivers, Texas. He received psychiatric treatment for delusional disorder which included the medication Haldol and his delusions dissipated. Respondent began supervised release which was revoked after a brief period and came to FMC-Rochester from FMC-Fort Worth for further psychological evaluation.

Since April, Dr. Olnes has observed behavior in Respondent that is symptomatic of undifferentiated schizophrenia. The diagnostic criteria for schizophrenia require that a person manifest at least two of five possible cardinal symptoms: delusions, hallucinations, disorganized thinking, catatonic behavior (or disorganized behavior), and various negative symptoms. According to Dr. Olnes, Respondent's behavior typifies all five symptoms.

First, Respondent experiences delusions, fixed false beliefs, that he is an FBI informant, that he is owed millions of dollars for his services, that FMC-Rochester staff are holding this payment, that staff have been given the authority to release him but refuse, and that he is unjustly incarcerated. His delusions have resulted in threatening behavior. He told a nurse at FMC-Rochester that he was going to "clean her clock" because she refused to give him the money from the FBI. In recent weeks he has targeted one nurse

and threatened to kidnap or lock her in a closet. On cross examination it came out that no one at FMC-Rochester investigated the truth of any of these accusations. Dr. Olnes stated that the reason he did not investigate was because Respondent presented the stories in such a disorganized way he did not know whether they could be true or false.

Respondent denies experiencing the second symptom, hallucinations. However, he is often seen talking to himself in an animated way. Dr. Olnes stated that many psychiatrists agree that such behavior is often coupled with hallucinations. In his own testimony, Respondent stated that he talks to himself because he is going over his legal issues and practicing testimony.

Third, Respondent manifests disorganized thinking as evidenced by his disorganized speech. Respondent rambles without appropriate verbal linkage and is difficult to understand. The content of his speech is also disorganized, but he can generally make himself understood after a while. He manifests 'pressured speech,' a subset of the disorganized-thinking symptom, where he interrupts people and cannot hold a conversation. Respondent's own testimony exhibited this pressured way of speaking as he continually interrupted the attorneys during questioning.

Fourth, Respondent manifests catatonic behavior or disorganized motor activity. This symptom can be manifested in a lack of movement or an increase of purposeless movement. Respondent is often seen pacing the hallways in a way that indicates an increase in purposeless movement. While pacing can be a symptom of boredom or depression, Dr. Olnes believes that the amount of pacing is too high to explained as anything but catatonic behavior. In addition, the pacing cannot be caused by medication because Respondent is not currently taking any medication.

Finally, Respondent manifests some of the negative symptoms associated with Schizophrenia. In particular, Respondent pays little attention to hygiene and demonstrates a restricted range of emotional responses. Dr. Olnes stated that Respondent has only two emotional expressions: placidity and anger. Most of the anger expressed by Respondent involves his legal difficulties and delusions discussed above.

In addition, Respondent manifests other symptoms of schizophrenia that do not fall into the above five categories; specifically, his social and occupational functioning have declined. Respondent has been unable work at FMC-Rochester because of his disorganized thinking. While it is true that no one has asked him to join a work team, so we do not know whether he would fail at work, this fact also suggests that others believe he is incapable of successful work. Respondent has no known peer relationships and no contact with his family. Prior to imprisonment, Respondent held a job for at least two years and was married. Thus, his current state indicates social/occupational deterioration.

Respondent also meets the exclusion criteria for Schizophrenia in that other causes for his behavior have been ruled out. Respondent is not taking illicit drugs and there is no evidence of a major mood disorder or depression.

When Respondent first arrived at FMC-Rochester his speech was more coherent than it is now. At that time Dr. Olnes believed that psycho tropic medication was not a necessity, but that it would be helpful. Respondent refused to accept medication and Dr. Olnes did not pursue it at that time. After further observations and investigation into Respondent's medical history, Dr. Olnes now believes medication is necessary to treat Respondent's illness.

The Court is persuaded that Respondent is suffering from schizophrenia based upon Dr. Olnes' psychiatric report and testimony at the hearing. Cross-examination cast some doubt on the second symptom, hallucinations, but the Court is convinced that Respondent suffers from at least two of the five cardinal symptoms, thus satisfying the diagnostic criteria for schizophrenia.

This conclusion is also supported by Respondent's pressured and disorganized speech and thoughts at the hearing. In addition, Respondent has not introduced any expert medical testimony to contradict Dr. Olnes' diagnosis. See United States v. Steil, 916 F.2d 485, 488 (8th Cir. 1990).

**B. Respondent is in Need of Custody for Care or Treatment.**

Although 18 U.S.C. § 4245(d) does not define when a prisoner is "in need of custody for care or treatment," courts have found that prisoners suffering from schizophrenia are "in need" of treatment under 18 U.S.C. § 4245 where a diagnosis is properly supported by psychological or psychiatric testimony. United States v. Tyus, 1992 WL 51312 (4th Cir. Mar. 19, 1992) (unpublished op.) (where two experts testified that prisoner suffered from schizophrenia and needed treatment, the Fourth Circuit affirmed the district court's determination that the prisoner should receive treatment); see also United States v. Martinez, 1992 WL 214483 (4th Cir. Sept. 2, 1992) (unpublished op.) (where psychologist testified that prisoner suffered from schizoaffective disorder and required custodial treatment, the Fourth Circuit upheld the district court's determination that the prisoner should receive treatment).

It is highly unlikely that Respondent's condition will improve spontaneously. With the passage of time, Respondent's opportunity for a full recovery worsens. Dr. Olnes stated that brain tissue is irreparably damaged when schizophrenia is not treated. Respondent has been offered and refused treatment without commitment. His past history indicates that he may stop treatment if not in custody to receive it. A consequence of not treating Respondent's illness may be that he cannot participate in potentially beneficial programs that may help him in the institution and when released. For example, when Respondent's delusions led to threatening behavior, he was taken out of the open unit and placed in a special housing unit for a few days.

The Court's conclusion is derived from well-settled legal principles. The Eighth Amendment imposes upon prison officials the duty to provide humane conditions of confinement, and this duty requires those officials to protect prisoners from violence at the hands of other prisoners and self-inflicted harm or suicide. Jensen v. Clarke, 73 F.3d 808, 810 (8th Cir. 1996); Reed v. Woodruff County, 7 F.3d 808, 810 (8th Cir. 1993). Moreover, prisoners do not have the right to remain in isolation or segregation to avoid a particular form of treatment. See Watson, 893 F.2d at 982 ("psycho tropic drugs may be constitutionally administered to a mentally ill federal prisoner whenever, in the exercise of professional judgment, such an action is deemed necessary to remove that prisoner from seclusion and to prevent the prisoner from endangering himself or others"). Accordingly, if a prisoner whose mental illness was left untreated would pose a danger to himself or others if placed in the general prison population, the Court finds that treatment is needed within the meaning of 18 U.S.C. § 4245.

The Court finds that Respondent cannot be placed in the general prison population without his mental illness being treated because he would pose a danger to prison staff and his fellow inmates. Respondent has displayed a series of behaviors that have continually made him a management problem, and have placed his own health and safety, as well as that of others, at risk. Respondent is in need of custody for care or treatment.

C. **FMC-Rochester is a Suitable Facility.**

The Court finds that FMC-Rochester is a suitable facility for Respondent to receive care or treatment. FMC-Rochester is a fully accredited hospital providing a wide range of medical and therapeutic options to incarcerated inmates. Dr. Olnes testified that Respondent could not get the medical attention that he needs at a regular prison facility. Millieu therapy, psychotherapy, and medical therapy are not available in a regular prison setting. Respondent offered no evidence to prove that FMC-Rochester is an inappropriate facility for him.

## RECOMMENDATION

For the reasons set forth above, it is recommended that the Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1] be granted, that Respondent be committed to the custody of the United States Attorney General, and that the Attorney General hospitalize Respondent at FMC-Rochester.

Dated: September 26, 2000

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **October 10, 2000** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **October 10, 2000**.